| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| COUNTY OF CATAWBA | SUPERIOR COURT DIVISION |
| | 17-CVS-_____ |

| Terrie Gragg, | |
| --- | --- |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| Viewmont Urology Clinic, P.A., | (Jury Trial Requested) |
| Defendant. | |

NOW COMES Plaintiff, **Terrie Gragg**, by and through counsel, and alleges and complains of the Defendant as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff Terrie Gragg for appropriate relief for the damages suffered due to Defendant's discriminatory actions.

## JURISDICTION AND VENUE

2. Plaintiff's Complaint is brought under Title VII of the Civil Rights Act of 1964 (Title VII) as amended by the Civil Rights Act of 1991 and set forth in 42 U.S.C. § 2000e, *et. seq.* This action is also authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Additionally, Plaintiff asserts claims pursuant to N.C. Gen. Stat. § 143-422.2.

3. Plaintiff seeks monetary relief, compensatory damages, and punitive damages pursuant to 42 U.S.C.§ 2000e(g) and North Carolina law.


EXHIBIT 1

1

4. This Honorable Court has jurisdiction over this matter as this is a civil action in which the amount in controversy exceeds the jurisdictional minimum limits of this Court set out in N.C. Gen. Stat. § 7A-243.

5. Venue is proper in Catawba County as it is the county where the unlawful employment practices alleged herein took place.

## PARTIES

6. Plaintiff, Terrie Gragg ("Ms. Gragg") is and was at all times relevant hereto, a citizen and resident of Granite Falls, Caldwell County, North Carolina.

7. Ms. Gragg is female and was at all times relevant hereto, more than forty (40) years of age.

8. **Defendant, Viewmont Urology Group, P.A. ("Defendant Viewmont")**, is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business located at 1202 North Center Street, Hickory, Catawba County, North Carolina, 28601. All allegations contained herein against Defendant Viewmont also refer to and include the principals, agents, employees, wholly-owned or partially-owned subsidiaries, and/or servants of said Defendant, either directly or vicariously, under the principles of corporate liability, the completed and accepted doctrine, apparent authority, agency, ostensible agency, and/or *respondeat superior*, and that the acts, practices, and omissions of Defendant Viewmont's employees and/or agents are imputed to their employer, Defendant Viewmont.

9. Defendant Viewmont is and was at all relevant times an employer within the meaning of Sections 701(b), (g) and (h) of Title VII of the Civil Rights Act of 1964.

10. Defendant Viewmont is and was at all relevant times an employer as defined by the ADEA because it is engaged in an industry affecting commerce and at all times relevant had

2

at least twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks of the year.

## PROCEDURAL REQUIREMENTS

11. Ms. Gragg has satisfied all federal procedural requirements as follows:

    (a) On or about February 25, 2016, Ms. Gragg filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), designated as EEOC Charge No. 430-2016-00934. The EEOC acknowledged receipt of Ms. Gragg's charge, invoking Title VII and the ADEA.

    (b) Ms. Gragg's Title VII claim:

    　　i. After more than 180 days had passed since she filed her original charge, Plaintiff requested and received a Notice of Right to Sue from the EEOC (see attached Exhibit "A").

    　　ii. Within ninety (90) days of the date on the Notice of Right to Sue, Ms. Gragg filed this Complaint.

    (c) Ms. Gragg's ADEA claim:

    　　i. More than sixty (60) days have passed since Ms. Gragg filed her Charge of Discrimination with the EEOC.

## FACTUAL BACKGROUND

12. Ms. Gragg is a female who is and all times relevant hereto over the age of forty (40).

13. In 2002, Ms. Gragg began her employment with Defendant Viewmont as a radiologic technologist, performing x-rays.

3

14. Defendant Viewmont is a clinic offering urologic medical care.

15. Until 2005, Defendant Viewmont did not have a computerized tomography ("CT") machine.

16. In late 2005, when Defendant Viewmont acquired a secondhand CT machine, Ms. Gragg volunteered to study for and obtain CT certification.

17. The machine Defendant Viewmont obtained was a Siemens 4-slice CT scanner, on information and belief made in or before 1985, meaning it was around twenty (20) years old when first obtained by Defendant Viewmont.

18. Ms. Gragg read and studied for the CT certification exam throughout the spring of 2006.

19. In the summer of 2006, Ms. Gragg took and passed the exam and received her CT certification.

20. When the only other certified CT technician left Defendant Viewmont in the fall of 2006, Ms. Gragg took responsibility for updating the practice's manuals for the CT machine, which included writing procedures for preparing patients for various diagnostic examinations.

21. Ms. Gragg was responsible for arranging routine maintenance on the CT machine and performing regular self-diagnostic "phantom studies" on the machine.

22. Ms. Gragg was in charge of maintaining the CT machine's American College of Radiology ("ACR") accreditation, which must be renewed every three years.

23. In 2011, Defendant Viewmont hired William Tankersley on an as-needed basis to fill in when Ms. Gragg was off work or performing duties other than CT scans.

24. Ms. Gragg trained William Tankersley on how to operate Defendant Viewmont's CT machine.

25.     In late 2013, Ms. Gragg prepared for and applied to the ACR for re-accreditation.

26.     In early 2014, Ms. Gragg received word that Defendant Viewmont's CT machine successfully passed ACR re-accreditation.

27.     When discussing the 2014 ACR re-accreditation with Ms. Gragg, Brian Stratmann, a physicist from Radiological Physics Consultants told Ms. Gragg that Defendant Viewmont's machine was so outdated it barely passed re-accreditation and there was no way it would pass another re-accreditation.

28.     Tankersley complimented Ms. Gragg on her ability to achieve re-accreditation when the machine was so out of date and difficult to operate.

29.     Ms. Gragg thanked Tankersley and agreed that it was becoming increasingly difficult to keep the machine operating properly as it aged.

30.     Tankersley told Ms. Gragg he was glad he did not have her job because he did not know how to accredit a machine and he would never have been able to get Defendant Viewmont's machine to pass re-accreditation.

31.     In 2014, when Defendant Viewmont's CT scanner was around thirty (30) years old, it began experiencing more frequent technical and mechanical problems.

32.     Because keeping the machine in working order was part of Ms. Gragg's job, she found herself regularly contacting Medical Imaging Solutions, Defendant Viewmont's contracted maintenance company, and Radiological Physics Consultants, physicists who specialized in imaging equipment, to report the problems with the machine and to try to resolve issues. Ms. Gragg would try to reach them on their personal cell phones when she could not reach them at their offices.

33.     Both the maintenance technician and the physicist from who examined the

5

machine told Ms. Gragg that the machine was as good as it would get and the recurring problems could not be prevented.

34. In or around February of 2015, Defendant Viewmont gave Ms. Gragg a positive performance evaluation and a raise of around $.41 per hour.

35. Throughout the spring and summer of 2015, Ms. Gragg continued to perform self-diagnostic phantom studies on the CT machine as recommended.

36. Increasingly, these self-diagnostics indicated the machine was "out of spec," which meant in part that it produced poor-quality images cluttered with visual static, or "noise."

37. Both the maintenance technician and the physicist told Ms. Gragg that she would have to try to do her best with the machine because they could not do anything to bring the machine into spec at its advanced age and that the machine needed to be replaced.

38. Out of necessity, Ms. Gragg became adept at reducing noise and coaxing the clearest possible images out of the aging machine.

39. It was impossible for Ms. Gragg to predict when the CT machine would break down, but whenever there was a problem, Ms. Gragg immediately called Medical Imaging Solutions.

40. While Carl, the technician at Medical Imaging Solutions generally responded promptly to Ms. Gragg's calls for technical support, on several occasions when she called requesting maintenance on the CT machine, Carl was on vacation or otherwise unable to travel from the Medical Imaging Solutions headquarters in Georgia to Defendant Viewmont's location until several days after Ms. Gragg placed a service call.

41. In the spring of 2015, Ms. Gragg informed Office manager Chris Wayne of new regulations that would take effect in 2016 and that the current CT machine would likely not be in

6

compliance.

42. In or around May of 2015, Ms. Gragg began researching new CT machines that would suit the needs of Defendant Viewmont's practice and would comply with new government regulations.

43. On October 7, 2015, Office Manager Christopher Wayne informed Ms. Gragg that she was being terminated, effective October 9, 2015.

44. During that conversation, Mr. Wayne did not give Ms. Gragg a reason for her termination other than that the doctors wanted a new CT machine and a new tech to run it.

45. Later, Mr. Wayne told Ms. Gragg that the doctors decided to replace her because they did not think she would be interested in learning about new technology.

46. Mr. Wayne also told Ms. Gragg that the doctors believed Ms. Gragg was not up to the task of being retrained on how to operate a new machine and that one of the doctors told him to pick a day to get Ms. Gragg out of there.

47. Mr. Wayne told Ms. Gragg that he hated to have to terminate her because she had a squeaky clean personnel file and had always been great at her job.

48. Ms. Gragg was also told that the doctors felt she would prefer to go back to doing x-rays somewhere and that Tankersley was more qualified to select a new machine and handle accreditation and compliance with new government regulations.

49. Throughout the last few years of Ms. Gragg's employment, Mr. Wayne communicated to coworkers of Ms. Gragg that female techs were incompetent and that the practice needed a man to get in there and run the department right.

50. Ms. Gragg's position was filled by William Tankersley, a man who was more than (10) years younger than Ms. Gragg.

7

51. At the time Tankersley replaced Ms. Gragg, he had been trained by Ms. Gragg, possessed the exact same technical qualifications as Ms. Gragg, and had five fewer years of CT experience than Ms. Gragg.

52. Ms. Gragg's age was a substantial factor in the Defendants' decision to terminate her employment.

53. Ms. Gragg's sex was a substantial factor in the Defendants' decision to terminate her employment.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Age Discrimination in Violation of the ADEA

54. Ms. Gragg re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

55. Ms. Gragg is and was at all times relevant over the age of forty (40).

56. Ms. Gragg was discharged from her employment with Defendant Viewmont.

57. As set forth herein, at the time of Ms. Gragg's discharge, she was performing her job at a level that met Defendant Viewmont's legitimate performance expectations.

58. Ms. Gragg's age was a motivating factor in Defendant Viewmont's decision to terminate her employment on or about October 7, 2015, in violation of the ADEA.

59. Defendant Viewmont replaced Ms. Gragg with Mr. William Tankersley, who is more than ten (10) years younger than Ms. Gragg.

60. Ms. Gragg has exhausted all administrative remedies and complied with the statutory prerequisites for maintaining an action under the ADEA.

61. As a direct and proximate result of Defendant Viewmont's intentional discriminatory conduct in violation of the ADEA, Ms. Gragg suffered damages; *inter alia*, lost

8

Case 5:17-cv-00083-GCM    Document 1-2    Filed 05/12/17    Page 8 of 17

wages, lost benefits, and other economic losses in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Sex Discrimination in Violation of Title VII

62. Ms. Gragg re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

63. The actions of Defendant Viewmont with regards to Ms. Gragg's employment, as set forth herein constitute intentional discrimination against Ms. Gragg on the basis of sex, in violation of Title VII.

64. Ms. Gragg has exhausted all administrative remedies and complied with the statutory prerequisites for bringing a claim for sex discrimination in violation of Title VII.

65. Ms. Gragg is entitled to recover compensatory damages as provided by Title VII in an amount in an amount to be determined at trial as a result of Defendant Viewmont's conduct alleged herein.

66. Ms. Gragg is further entitled to recover reasonable attorney's fees, the costs and the expenses of this action and such interest as may be allowed by law.

## THIRD CAUSE OF ACTION
### Wrongful Discharge in Violation of Public Policy (WDPP)
### (Age Discrimination)

67. Ms. Gragg re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

68. Ms. Gragg's age was a substantial factor in Defendant Viewmont's decision to terminate Ms. Gragg's employment.

69. At the time of her termination, Ms. Gragg was over forty (40) years of age.

70. As set forth herein, at the time of her termination, Ms. Gragg was satisfying Defendant Viewmont's legitimate performance expectations.

9

71. Defendant Viewmont replaced Ms. Gragg with someone more than ten (10) years younger than Ms. Gragg.

72. The actions of Defendant Viewmont set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting Ms. Gragg from being discharged from her position on account of her age, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, *et seq.*

73. As a proximate result of Defendant Viewmont's conduct, in this respect, Ms. Gragg has suffered damages, *inter alia*, lost wages, damage to reputation, mental distress, embarrassment, humiliation, and pain and suffering in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Wrongful Discharge in Violation of Public Policy (WDPP)
*(Sex Discrimination)*

74. Ms. Gragg re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

75. Ms. Gragg was satisfying Defendant Viewmont's legitimate performance expectations.

76. Ms. Gragg's sex was a significant factor in Defendant Viewmont's decision to terminate Ms. Gragg's employment.

77. The actions of Defendant Viewmont set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting Ms. Gragg from being discharged from her position on account of her sex, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, *et seq.*

78. As a proximate result of Defendant Viewmont's conduct, in this respect, Ms. Gragg has suffered damages, *inter alia*, lost wages, damage to reputation, mental distress,

embarrassment, humiliation, and pain and suffering in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### Punitive Damages under North Carolina Common Law

79. Ms. Gragg re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

80. As set forth herein, Defendant Viewmont's actions indicate that when Defendant Viewmont terminated Ms. Gragg, Defendant Viewmont acted with conscious and intentional disregard and indifference to Ms. Gragg's rights.

81. The officers, directors, and/or managers of Defendant Viewmont participated in or condoned the conduct constituting the aggravating factors giving rise to punitive damages.

82. Pursuant to N.C.G.S. § 1D, *et seq.*, Ms. Gragg contends that punitive damages are required to punish Defendant Viewmont for its wrongful acts and to deter Defendant Viewmont and others from committing similar wrongful acts.

83. Under the circumstances of this case, in determining punitive damages, the Court should consider evidence that relates to the following:

> (a) The reprehensibility of Defendant Viewmont's motives and conduct, including evidence of insult, indignity, malice, oppression, bad motive fraud, recklessness, wantonness, willful injury, or a wrongful act without a reasonable excuse;
>
> (b) The likelihood at the relevant time of serious harm to Ms. Gragg;
>
> (c) The degree of Defendant Viewmont's awareness of the probable consequences of their conduct;
>
> (d) The duration of Defendant Viewmont's conduct;

(e) The actual damages suffered by Ms. Gragg;

(f) Any concealment by Defendant Viewmont of the facts or consequences of its conduct;

(g) The existence and frequency of any similar past conduct by Defendant Viewmont;

(h) Whether Defendant Viewmont profited by the conduct;

(i) Defendant Viewmont's ability to pay punitive damages as evidenced by its revenue or net worth.

84. Due to the aforesaid wanton, reckless, intentional conduct of Defendant Viewmont, Ms. Gragg is entitled to punitive damage in such amount as the Court may deem just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, Terrie Gragg demands a trial by jury of all issues so triable and respectfully prays for judgment against Defendant Viewmont as follows:

1. For a money judgment against Defendant Viewmont for the violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-5(g), representing all lost benefits of employment and compensatory damages, including but not limited to loss of wages, loss of benefits, loss of status, loss of reputation, emotional distress and inconvenience, for an amount to be determined at the trial of the action.

2. For a money judgment against Defendant Viewmont for violating the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

3. For a money judgment against Defendant Viewmont for wrongful discharge in violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et*

*seq.*, representing all lost benefits of employment and compensatory damages, including but not limited to lost wages, lost employment benefits, loss of status, loss of reputation, and inconvenience in an amount to be determined at a trial of the action.

4. For a money judgment against Defendant Viewmont for punitive damages, under both the common law and Constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1 *et seq.* for wrongful discharge because of malicious, willful, and wanton violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, for an amount which shall be determined at a trial of the action.

5. For punitive damages against Defendant Viewmont, as may be awarded by a jury, under both the common law and Constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1 et seq., as allowed by law in such amount as may be determined in the discretion of the jury;

6. Award Ms. Gragg damages for lost wages, lost benefits, emotional and physical pain, loss of enjoyment of life, damage to reputation, deterioration of health, pain, suffering and other irreparable injury in an amount which shall be determined at a trial of the action, of and from the Defendants jointly and severally as their liabilities may appear;

7. That the Court permanently enjoin the Defendant Viewmont from violating Title VII and the ADEA.

8. For pre-judgment and post-judgment interest on all amounts found due to Ms. Gragg at the legal rate;

9. For a trial by jury on all triable issues; and

10. For such further and additional relief at law and equity as the Court may deem just and proper.

13

Case 5:17-cv-00083-GCM    Document 1-2    Filed 05/12/17    Page 13 of 17

THIS THE 5TH DAY OF APRIL, 2017.

SEIFERFLATOW, PLLC

By: _____
ELIZABETH K. VENNUM
NC State Bar No. 49747

By: _____
MATHEW E. FLATOW
NC State Bar No. 35282

**Counsel for Plaintiff Terrie Gragg**
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

14

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF CATAWBA    FILED      17-CVS-_921_

Terrie Gragg,

2017 APR -5 P 12:29

CATAWBA CO., C.S.C.
BY _____

Plaintiff,

v.

Viewmont Urology Clinic, P.A.,

Defendant.

**Verification of Complaint**

I, Terrie Gragg, being first duly sworn, deposes and says that I have read the foregoing COMPLAINT initiating this matter before the Superior Court in Catawba County and know the contents thereof, and that the same is true and correct to the best of my knowledge, except as to those matters and things alleged upon information and belief, and, as to those things, I believe them to be true.

_/s/ Terrie Gragg_
Terrie Gragg

Mecklenburg County, North Carolina

Signed and sworn to before me this day by _Terrie Gragg_.
(name of principal)

Date: _4/5/2017_      _/s/_
NOTARY PUBLIC

(Official seal)      My Commission Expires: _2/22/2022_

> **Dominique M. Koch**
> NOTARY PUBLIC
> Mecklenburg County
> North Carolina
> Commission Expires 02/22/2022

15

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF CATAWBA     17-CVS-921

FILED 2017 APR -6 A 9:51
CATAWBA CO., C.S.C.
BY: KM

Terrie Gragg,

    Plaintiff,

v.

Viewmont Urology Clinic, P.A.,

    Defendant.

EXHIBIT "A" TO COMPLAINT

NOW COMES Plaintiff, **Terrie Gragg**, by and through counsel, and submits the attached Right to Sue letter, marked Plaintiff's Exhibit "A."

THIS THE 5TH DAY OF APRIL, 2017.

SEIFERFLATOW, PLLC

By: _____
ELIZABETH K. VENNUM
NC State Bar No. 49747

By: _____
MATHEW E. FLATOW
NC State Bar No. 35282

Counsel for Plaintiff Terrie Gragg
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

EEOC Form 161 (11/16)   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Terrie Gragg<br>2998 Ramblewood Drive<br>Granite Falls, NC 28630 | From: | Charlotte District Office<br>129 W. Trade Street<br>Suite 400<br>Charlotte, NC 28202 |
|---|---|---|---|

FILED 2017 APR -6 A 9:51

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 430-2016-00934 | Aundrea L. Smallwood,<br>Investigator | (704) 954-6456 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Reuben Daniels, Jr.,
Director

JAN 9 2017
(Date Mailed)

Enclosures(s)

cc: Kathleen Bradshaw
Nexsen Pruet
227 West Trade Street
Suite 1550
Charlotte, NC 28202

Wesley Rainer
SEIFERFLATOW, PLLC
2319 Crescent Ave
Charlotte, NC 28207